## United States District Court
## District of Massachusetts

```
                              )
Martinho Tavares Rodrigues,   )
                              )
           Plaintiff,         )
                              )
     v.                       )
                              )     Civil Action No.
Ur M. Jaddou, et al.,         )     21-10247-NMG
                              )
           Defendants.        )
                              )
                              )
```

### MEMORANDUM & ORDER

**GORTON, J.**

This action arises out of the latest of several attempts by petitioner Martinho Rodrigues ("Rodrigues" or "petitioner") to establish his purported United States citizenship. Pending before the Court is the motion of defendants Ur M. Jaddou ("Jaddou"), Director of United States Citizenship and Immigration Services ("USCIS"), Denis Riordan, USCIS District Director for New England and Alejandro Mayorkas, Secretary of the Department of Homeland Security, (together, "defendants") to dismiss the amended complaint for lack of jurisdiction and failure to state a claim.[1]  For the following reasons, the motion to dismiss will be allowed.

---

[1] Jaddou was appointed as Director of USCIS on August 3, 2021, and is automatically substituted for Tracy Renaud pursuant to Fed. R. Civ. P. 25(d).

-1-

Rodrigues was born in Cape Verde in 1982.  His parents divorced in 1984 and, in 1987, Rodrigues and his mother emigrated from Cape Verde to the United States.  Rodrigues's father was an earlier immigrant to the United States.  Both parents settled in Boston and during his childhood Rodrigues spent time living with each of his parents at their separate residences.  That arrangement was not, however, reduced to a formal custody agreement.  In 1993, when Rodrigues was 11 years old, his father became a naturalized United States citizen.

In 2006, Rodrigues was placed in removal proceedings after a criminal conviction.  In those proceedings, Rodrigues argued that he could not be removed because he had obtained United States citizenship derivatively through his father.  The Immigration Judge disagreed and held that Rodrigues had not demonstrated that he was in the sole legal custody of his father at the time his father was naturalized, a prerequisite for citizenship under section 321 of the Immigration and Naturalization Act ("the INA"), 8 U.S.C. § 1432, as then constituted.[2]  As a result, Rodrigues was ordered removed to Cape Verde.  Rodrigues appealed that decision, without success, to the Board of Immigration Appeals ("the BIA") and then, in 2009, to the Third Circuit Court of Appeals ("the Third Circuit"). See

---

[2] The INA has since been amended but the amendments do not have retroactive effect and therefore are of no consequence here.

Rodrigues v. Attorney General, 321 Fed. App'x 166 (3d Cir. 2009).

Meanwhile, in November, 2006, Rodrigues filed an application for certification of United States citizenship, known as a Form N-600, with USCIS. See 8 U.S.C. § 1452, 8 C.F.R. § 341.1 (providing application process for a certificate of citizenship). Rodrigues's Form N-600 was denied in February, 2007, and he did not appeal the denial.

In January, 2019, Rodrigues submitted a second Form N-600 to USCIS, claiming citizenship on the same grounds as he did in first Form N-600, i.e. derivatively as a result of his father's naturalization. USCIS denied the second Form N-600 in April, 2019. Rodrigues appealed the denial to the Administrative Appeals Office ("AAO") in May, 2019, and the AAO dismissed that appeal in August, 2020. He then filed this action in February, 2021, seeking judicial review of the AAO decision pursuant to the Administrative Procedure Act ("the APA"), 5 U.S.C. § 702 et seq. Rodrigues amended his complaint in September, 2021, to add a second theory based upon the INA. Shortly thereafter, defendants moved to dismiss the amended complaint.

I. **Motion to Dismiss**

   A. **Legal Standard**

To survive a motion under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state

a claim for relief that is actionable as a matter of law and
"plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
(2007)).  A claim is facially plausible if, after accepting as
true all non-conclusory factual allegations, the court can draw
the reasonable inference that the defendant is liable for the
misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d
1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look
beyond the facts alleged in the complaint, documents
incorporated by reference therein and facts susceptible to
judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st
Cir. 2011).  A court also may not disregard properly pled
factual allegations even if actual proof of those facts is
improbable. Ocasio-Hernandez, 640 F.3d at 12.  Rather, the
relevant inquiry focuses on the reasonableness of the inference
of liability that the plaintiff is asking the court to draw. Id.
at 13.

To survive a motion to dismiss for lack of subject matter
jurisdiction under Fed. R. Civ. P. 12(b)(1), the
petitioner/plaintiff bears the burden of establishing that the
Court has jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S.
555, 561 (1992).  If the defendant mounts a "sufficiency
challenge", the court will assess the sufficiency of the

plaintiff's jurisdictional allegations by construing the complaint liberally, treating all well-pled facts as true and drawing all reasonable inferences in the plaintiff's favor. Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

If, however, the defendant advances a "factual challenge" by controverting the accuracy, rather than the sufficiency, of the alleged jurisdictional facts, "the plaintiff's jurisdictional averments are entitled to no presumptive weight" and the court will consider the allegations by both parties and resolve the factual disputes. Id.  The court has "broad authority" in conducting the inquiry and can, in its discretion, consider extrinsic evidence in determining its own jurisdiction. Id. at 363-64.

    B. **Application**

Defendants contend that Rodrigues's claims under the INA are time-barred and that no relief is available to him under the APA as a matter of law.  Rodrigues responds that jurisdiction exists and relief is available.

### i. Immigration and Naturalization Act Claims

The INA provides that a non-citizen may seek to establish derivative citizenship either defensively, in response to removal proceedings, or affirmatively, by submitting a Form N-600 to USCIS. See Anees v. Napolitano, 972 F. Supp. 2d 140, 143-

44 (D. Mass. 2013).  Although Rodrigues has pursued his claim of citizenship in both affirmative and defensive fashion, this action concerns the denial of his Form N-600s.

An applicant such as Rodrigues whose Form N-600 is denied by USCIS may appeal that denial to the AAO. 8 C.F.R. § 103.3. If the AAO denies the appeal, the applicant can then seek review in federal district court under the INA. 8 U.S.C. § 1503(a).  A federal action brought under the INA must, in relevant part,

> be instituted only within five years after the final
> administrative denial of such right or privilege.

Id.  Although the First Circuit has yet to address the effect of the INA's time bar upon the availability of judicial review of a second or subsequent Form N-600, other federal courts have held that the statutory clock begins to run on the date of the final administrative denial of the first Form N-600. See, e.g. Icaza v. Schultz, 656 F. Supp. 819, 821 (D.D.C. 1987) (holding denial of plaintiff's first passport application was "the final administrative denial"); Gonzalez v. Limon, 926 F.3d 186, 188 (5th Cir. 2019) (finding successive action filed by plaintiff time-barred because of the INA's "implicit limitation to the initial administrative denial."); Henry v. Quarantillo, 684 F. Supp. 2d 298, 307 (E.D.N.Y. 2010) (explaining that the statutory time bar would be vitiated if applicants were able to file

-6-

multiple Form N-600s and measure time from the most recently filed form).

Here, Rodrigues filed his first Form N-600 in November, 2006, which was finally denied by USCIS in 2007.  He did not appeal that denial.  Rodrigues filed a second Form N-600 with USCIS 12 years later and sought review of its denial in this court in 2021.  Because more than five years passed between the final administrative denial of his first Form N-600 and the commencement of this action, Rodrigues is statutorily barred from seeking review of the AAO's denial of the second Form N-600.  See 8 U.S.C § 1503(a).

Rodrigues acknowledges that substantial delay but nevertheless contends that he is entitled to review of the denial of his second Form N-600 because it is dependent upon new evidence and separate from his initial removal proceedings, citing Gonzales, 926 F.3d at 189.  That argument avails him little, however, because he has proffered no new facts in support of the second Form N-600.  Rather, as his pleadings make clear, Rodrigues filed the second Form N-600

> to shine a light on the misapplied Pennsylvania custody
> interpretation which then changed the weight of all of his
> existing evidence.

Put differently, Rodrigues urges this Court to correct a
purported error of law made by a circuit court of appeals more
than a decade ago.  The INA affords no such dispensation.[3]

### ii. Administrative Procedure Act Claims

Rodrigues's claim for relief under the APA fares no better.
Judicial review is available under the APA only if no other
statute "expressly or impliedly forbids the relief which is
sought" and no other adequate remedy can be judicially obtained.
5 U.S.C. §§ 702, 704.  Here, Rodrigues seeks to compel
defendants to consider his second Form N-600 under the custody
law of Massachusetts which, he avers, would vindicate his claim
of derivative citizenship.

No matter how his claims are formatted, they ultimately
seek the same relief: approval of Rodrigues's second Form N-600
and declaration of his purported United States citizenship.  The
INA provides for that remedy and, consequently, Rodrigues cannot
pursue it under the auspices of the APA. See 8 U.S.C. § 1503.
The APA does not "duplicate existing procedures for review of
agency action", Bowen v. Massachusetts, 487 U.S. 879, 903
(1988), and a legal remedy is not inadequate for the purposes of

---

[3] In any event, the Court doubts its jurisdiction to determine
the immigration status of a plaintiff where, as here, a question
of that status arose in connection with a removal proceeding.
See 8 U.S.C § 1503(a); accord Headley-Ombler v. Holder, 985 F.
Supp. 2d 379, 387 (E.D.N.Y. 2013).

the APA merely because a plaintiff, through a failure in diligence, has "inadvertently deprived [himself] of the opportunity to pursue [it]", <u>Town of Sanford</u> v. <u>United States</u>, 140 F.3d 20, 23 (1st Cir. 1998), <u>see</u> <u>Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians</u> v. <u>Patchak</u>, 567 U.S. 209, 215 (2012).

<b>ORDER</b>

For the foregoing reasons, defendants' motion to dismiss (Docket No. 17) is **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  April 29, 2022